IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHANCHUN YU AND RUILI JIN | ) | CASE NO.: 1:18-cv-07303 |
| | ) | |
| Plaintiffs, | ) | Judge: |
| | ) | |
| v. | ) | **COMPLAINT AND** |
| | ) | **JURY DEMAND** |
| DIGUOJIAOYU, INC. d/b/s | ) | |
| DIGUO EDU. | ) | |
| 31 W. 34th Street, Floor 8 | ) | |
| New York, NY 10001 | ) | |
| AND | ) | |
| | ) | |
| SHUNTAO ZHANG a/k/a KIMI ZHANG | ) | |
| 425 Washington Blvd. Apt.: 3507 | ) | |
| Jersey City, NJ 07310 | ) | |
| AND | ) | |
| | ) | |
| XIANYANGLIDEYUANSHANGMAO, LLC. | ) | |
| Qinduqu 56 Suites 30601 | ) | |
| Xianyang Shanxi Province 710086, China | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Shanchun Yu and Ruili Jin, by and through their attorneys, KING L. WU & ASSOCIATES, P.C., hereby files the following complaint against Defendants as captioned above.

**JURISDICTION**

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(3) as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

## PARTIES

2. Plaintiff Shanchun Yu a citizen of the People's Republic of China who was a student attending Columbia University located in the City of New York.

3. Plaintiff Ruili Jin a citizen of the People's Republic of China who was a student attending SUNY Stony Brook University located in Stony Brook, New York.

4. At all times material, Defendant Diguojiaoyu, Inc. d/b/s Diguo Edu was and continues to be a New York corporation, authorized to conduct business and conducting business in the State of New York, with its principle place of business located at 31 W 34th Street, Floor 8, New York, NY 10001 (hereinafter referred to as "Diguo").

5. At all times material, Defendant Shuntao Zhang a/k/a Kimi Zhang was and continues to be the manager of Diguojiaoyu, Inc. d/b/s Diguo Edu residing at 425 Washington Blvd., Apt.: 3507 Jersey City, NJ 07301. (hereinafter referred to as "Kimi")

6. At all times material, Defendant Xianyanglideyuanshangmao, LLC., was and continues to be a Chinese corporation affiliated with Diguojiaoyu, Inc. with its principle place of business in China (hereinafter referred to as "Shangmao").

## INTRODUCTION

7. Plaintiffs bring this action as a result of Diguo's fraudulent and unfair business practices. Diguo has engaged in a pattern and practice of deceiving plaintiffs and other Chinese international students based upon misrepresentations and the unauthorized fabrication and alteration of academic transcripts, resumes, and letters of recommendation.

8. Based upon these misrepresentations and fraudulent transcripts prepared by Diguo, unbeknown to plaintiffs, these altered transcripts were submitted by Diguo on behalf of the plaintiffs for the purposes of gaining admission into prestigious universities in the United States such as Columbia University and Boston University.

9. After being admitted, the fraudulent academic transcripts were later unfolded through the verification process by the universities. Plaintiffs were then confronted and expelled from their respective universities.

10. Because of this illicit practice, Diguo has obtained a large, wrongful profit from plaintiffs and other Chinese International Students who innocently believed their admissions were granted by a legitimate mean.

## FACTUAL ALLEGATIONS

11. Diguo a corporation duly organized in the State of New York in the year of 2017.

12. Diguo has been holding itself out as an "Education Consultant" for assisting students in the admission process.

13. Upon information and belief, Diguo does not have an actual office.

14. Upon information and belief, Diguo is only maintaining a virtual office at the location referenced in the caption above.

15. Upon information and belief, majority of the communications and correspondences are exchanged through an instant messaging app called "WeChat."

16. Diguo allegedly started assisting Chinese International Students and other students to gain admission into prestigious universities since the year of 1998.

17. Diguo's website and advertisements claim that by using their services will increase the chances of being admitted into prestigious universities including but not limited to

Columbia University, University of Pennsylvania, Harvard University, Johns Hopkins University, New York University, Boston University, University of South California, Stanford University, and University of California at Los Angeles.

18. Numerous of redacted acceptance letters were being published by Diguo on its website as a method of advertisement to accentuate the company. [Exhibit A]

19. Upon information and belief, those acceptances referenced in Exhibit A were also acceptances granted by using fraudulent academic transcripts and other fabricated application material including but not limited to forged letters of recommendation and resumes. [Exhibit I & J]

20. Diguo further claims that among other education consultants, Diguo by far has the highest successful rate in getting students accepted by Columbia University in New York. [Exhibit B]

21. Diguo planned a systematic fraudulent scheme to induce innocent Chinese international students by using Diguo's fraudulent services to gain admission into prestigious universities.

22. The actual fraud scheme is carried out through the following phases:
    a. (1) Recruiting independent Chinese-speaking individuals such as F1-Visa Chinese students, who were successfully accepted and/or graduated from their universities to disseminate deceptive information and rumors about having a 100% successful rate to prestigious universities by using Diguo's services.
        i. In the event of exposure, Diguo would claim the recruited were not employees of Diguo, and Diguo had no knowledge and control over the recruiter's actions.

      ii. Furthermore, since the recruiters were once users of Diguo's services and were successfully admitted into their universities, they do not know that they are spreading false information.

b. (2) Inducing innocent Chinese international students into believing Diguo has so-called "internal connection" with numerous prestigious universities throughout United States.

      i. When confronting skeptical students, Diguo would fraudulently explain that these "internal connections" included personal connections with the Dean of Admissions, tenure professors, Dean of School of Professional Studies, and other faculty members that weighed in on student applications.

      ii. Diguo would fraudulently claim that they have connections with high-ranked officials in those universities who are willing to accept money as a form of donation to the school, or as contribution to help start-up foundation at the school in exchange for admission.

c. (3) Requesting an official transcript from students to be sent to them for application purposes

      i. It is not unusual for international students to utilize "education consultant agencies" for school applications because Chinese schools do not have a guidance counselor who teaches the college application process. Therefore, there is no reason these Chinese international students would know that academic transcripts actual need to be sent directly to the university in which they are applying for.

    d. (4) In some cases, returning to students an altered transcript in a sealed envelope.

        i. Diguo would then fraudulently claim that within the sealed envelope contains a recommendation letter by a professor/dean and the original transcript provided by the students.

        ii. Diguo would also emphasis to the students not to break the seal otherwise the within materials will lose it authenticity.

    e. (5) Mailing the sealed envelope by Diguo or by the students themselves or instructing students to bring the sealed envelope to the pursued school at the time of new students orientation.

        i. Due to the high quality of the falsified transcripts, many schools fail to question its authenticity; but in the cases that they do, students would therefore have a copy on hand to submit.

23. Plaintiffs were Chinese international students who traveled to the United States from China for educational purposes.

24. Plaintiff Shanchun Yu was first admitted into Ohio State University in Ohio for a bachelor's degree.

25. Plaintiff Shanchun Yu had no interest in pursuing for a master's degree knowing her grade point average was not high enough for an acceptance to any prestigious university.

26. However, in December 2016, one month prior to Plaintiff Shanchun Yu's graduation, she was approached by another Ohio State University student, Nanhao Zhang (hereinafter referred to as "Nanhao").

Shanchun Yu, unaware of the application process, ordered an official copy and hand delivered it to Kimi in New York.

34. Plaintiff Shanchun Yu made a down-payment of $2,000.00 to Shuntao Zhang, "Kimi," of Diguo via Chase QuickPay. The remaining ¥251,658.00 (Approximately $43,000.00 U.S. Dollars) was transferred by her father to a Diguo representative in China named "Hong Liu." [Exhibit D]

35. Plaintiff Shanchun Yu was later accepted into Columbia University's School of Professional Studies and began studying at Columbia University's School of Professional Studies.

36. Immediately after her acceptance, Kimi asked Plaintiff Shanchun Yu to advertise and broadcast her acceptance on social media. Kimi informed Plaintiff Shanchun Yu that if she recommended a successful client, she would receive a commission for her services.

37. Plaintiff Shanchun Yu did not advertise her acceptance because she knew her acceptance was based upon her generous donation to Columbia University and did not want others to know because it was not a fact to be proud of.

38. Plaintiff Shanchun Yu started studying at Columbia University in 2017 and was maintaining a grade point average of 3.7.

39. In May of 2018, Plaintiff Shanchun Yu was contacted by Mr. Peter Krates from Columbia University's Office of Student Conduct. Columbia University claimed that Plaintiff Shanchun Yu allegedly submitted fabricated application materials when she applied for Columbia University. [Exhibit E]

40. Plaintiff Shanchun Yu was thereby expelled from Columbia University School of Professional Studies. [Exhibit F]

41. Plaintiff Ruili Jin was first admitted to Stony Brook University for a Bachelor's Degree.

42. In December of 2017, Plaintiff Ruili Jin called an old friend, Peixi Zhong "Paicy," (hereinafter referred to as "Paicy") to borrow $1,000.00. Plaintiff Ruili Jin, like all international students, receive allowance money through wire transfers from China, and hers had not arrived in the United States yet that month.

43. During the phone call, Paicy asked Plaintiff Ruili Jin if Plaintiff Ruilin Jin was interested in applying to Boston University, where Paicy is currently studying.

44. Plaintiff Ruili Jin informed Paicy that her grade point average was too low to gain an acceptance into Boston University. Paicy then told Plaintiff Ruili Jin that she knew of an education consultant agency, Diguojiaoyu, Inc., that had connections with the admissions department and could guarantee Plaintiff Ruili Jin's acceptance.

45. Plaintiff Ruili Jin was put in contact with a representative from Diguo named Kimi.

46. Kimi informed Plaintiff Ruili Jin that she had to give Diguo $48,000.00 in order for Boston University to accept her based on her low grade point average. Plaintiff Ruili Jin explained that her family was in a tough financial situation and could not come up with that much money. After long negotiation, an amount of $45,000.00 was agreed by both parties.

    a. Kimi explained to Plaintiff Ruili Jin that the normally a portion of the money was given as commission to the sales representatives, Paicy and Kimi, and a portion to Diguo, and the majority portion to Boston University. However, in this case, Kimi would not be making any money off Plaintiff Ruili Jin since the price was negotiated.

27. Nanhao informed Plaintiff Shanchun Yu of Diguo and their services. He informed her of Diguo's high acceptance rates and that he could provide her with the WeChat information of one of their employees.

28. The representative from Diguo was a man named Shuntao Zhang also known as, "Kimi". [Exhibit C]

29. Plaintiff Shanchun Yu started communicating with Kimi. Unsure of their services, she first asked whether or not Diguo could help her with her H1-B Visa process. Instead, Kimi offered her their university application services and informed her of Diguo's 100% success rate.

30. Unpersuaded at first, Plaintiff Shanchun Yu found Diguo's advertisements throughout the internet. Specifically, Diguo's website was covered by acceptance letters as well as successful students sharing their stories and experiences on WeChat.

31. Plaintiff Shanchun Yu was further persuaded by Diguo when Kimi offered her to meet an New York University Graduate student and listen to his success story. Plaintiff Shanchun Yu found it unnecessary since Diguo's website was telling enough.

32. Plaintiff Shanchun Yu moved from Ohio to New York after graduation to seek Diguo's services. Plaintiff Shanchun Yu agreed to give ¥300,000 (Approximately $45,000 U.S. Dollars) to Diguo.
    a. Kimi, on behalf of Diguo informed her that the majority would go to Columbia University for donation purposes, a small amount to Kimi for sales, and the remaining small portion to Diguo for their services.

33. Plaintiff Shanchun Yu was instructed to provide an official copy of her academic transcript from Ohio State Unviersity to Diguo for application purposes. Plaintiff

47. Plaintiff Ruili Jin gave her first payment of $10,000.00 to Paicy to give to Diguo. And the remaining $35,000.00 was paid through a wire transfer from Plaintiff Ruili Jin's father to a Diguo representative in China named "Hong Liu."

48. A couple weeks after the payment, Paicy asked Plaintiff Ruili Jin to send an official transcript to Boston University. Since Plaintiff was out of town, she provided her trustworthy friend with her login information.

49. Upon information and belief, Paicy was instructed by Kimi to send the transcript to K. Zhang at 425 Washington Blvd., Apt 3507, Jersey, NJ 07310. [Exhibit G]

50. Upon information and belief, K. Zhang is Kimi Zhang, also known as Shuntao Zhang.

51. Plaintiff Ruili Jin was informed by Kimi a couple weeks after of her acceptance into Boston University. A photo of her acceptance letter was sent to her via WeChat. [Exhibit J]

52. On July 6, 2018, Kimi sent Plaintiff Ruili Jin a Fedex package containing an high quality altered transcript. Plaintiff Ruili Jin was told that the package contained an official copy of her academic transcript from Stony Brook University and was instructed to keep it sealed until her new student orientation at Boston University.

53. Plaintiff Ruili Jin was contacted by Stony Brook University's Academic Judicary regarding a fabricated transcript sent to Boston University.

54. Plaintiff Ruili Jin was thereby expelled from Stony Brook University. [Exhibit H]

55. Upon information and belief, Diguo holds a virtual office in Manhattan, New York.

56. Upon information and belief, Diguo utilizes word of mouth advertisement from successful clients to reach more potential clients. Successful clients, also known as recruiters or sales representatives, would in return receive a commission from Diguo.

57. Upon information and belief, Diguo would offer their services with an 100% guarantee acceptance into a prestigious university, such as Boston University and Columbia University in exchange for $45,000.00.

58. Upon information and belief, Diguo would further deceive Chinese international students by claiming majority of the aforementioned price of $45,000.00 would be made as a contribution to the respective University's foundation in exchange for their admittance into the University.

59. Upon information and belief, students would make the first payment in the United States as a down payment and the remaining payment in China to a representative named Hong Liu.

60. Upon information and belief, successful clients do not know that their acceptance into their respective universities were based on fabricated transcripts and other application materials.

61. Upon information and belief, Plaintiffs Shanchun Yu and Ruili Jin are not the only victims of Diguo's fraudulent scheme.

62. Plaintiff Shanchun Yu contacted Diguo regarding her expulsion and was provided with a letter claiming responsibility regarding the fabrication of materials. [Exhibit I]

63. Plaintiff Ruili Jin contacted Diguo regarding her expulsion and was provided with a letter claiming responsibility regarding the fabrication of materials. [Exhibit J]

## FIRST CAUSE OF ACTION
## FRAUD (AGAINST ALL DEFENDANTS)

65. Plaintiff repeat and reiterate paragraphs 1 to 64 as though set out fully herein.

66. Defendants made the false representations described above in support of their scheme to defraud Plaintiffs. In particular, Defendants falsely represented that they had "nternal connection" to prestigious universities: 1. recommendations letter written by former or currently professors/deans for Plaintiffs; 2. acceptance by donation; where in truth, Defendants so-called "Internal Connection" was nothing but the fabrication of fraudulent documents.

67. Defendants made the false representations described above, and carried out the scheme described about, with intent to deceive Plaintiffs and others.

68. Plaintiffs justifiably relied upon Defendants' misrepresentations.

69. Plaintiffs were directly damaged by their justified reliance and the trust that they placed in Defendants.

70. In addition to the dollar amount paid to Defendants, Plaintiffs have spent over Four Hundred Thousand dollars that they would not otherwise have disbursed but for Defendants' fraudulent scheme.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

71. Plaintiffs repeat and reiterate paragraphs 1 to 64 as though set out fully herein.

72. By reason of the forgoing Defendants have received an amount of about $90,000 from Plaintiffs that Defendants should not have received and which they cannot in good conscience be allowed to retain.

73. By reason of the foregoing, Defendants have been unjustly enriched.

74. Plaintiffs are entitled to the return of all amounts Defendants have been unjustly enriched.

### THIRD CAUSE OF ACTION
### AIDING AND ABETTING FRAUD
### (AGAINST SHUNTAO ZHANG a/k/a KIMI ZHANG)

75. Plaintiff repeat and reiterate paragraphs 1 to 64 as though set out fully herein.

76. Shuntao Zhang a/k/a Kimi Zhang aided and abetted Diguo's fraudulent scheme against Plaintiffs.

77. Shuntao Zhang a/k/a Kimi Zhang was, at all relevant times, aware of the scheme perpetrated by Diguo. His actual knowledge is evidenced by his participation in various steps of the scheme.

78. Shuntao Zhang a/k/a Kimi Zhang substantially participated in Diguo's scheme by accepting money and creating fraudulent documents.

79. Plaintiffs have been damaged as a result of Shuntao Zhang a/k/a Kimi Zhang's aiding and abetting of Diguo's fraudulent scheme.

### FOURTH CAUSE OF ACTION
### NEW YORK EXECUTIVE LAW §63(12) FRAUD
### (AGAINST ALL DEFENDANTS)

80. Plaintiff repeat and reiterate paragraphs 1 to 64 as though set out fully herein.

81. New York Executive Law §63(12) prohibits fraud in the conduct of any business, trade or commerce.

82. By reason of the conduct alleged above, Defendants repeatedly engaging in fraudulent acts and practices in connection with the transactions in violation of New York Executive Law §63(12).

## FIFTH CAUSE OF ACTION
## NEW YORK GENERAL BUSINESS LAW §349
## DECEPTIVE ACTS AND PRACTICES (ALL DEFENDANTS)

83. Plaintiff repeat and reiterate paragraphs 1 to 64 as though set out fully herein.

84. New York General Business Law §349 prohibits "deceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State.

85. By acting as "Education Consultant" service providers, Defendants conduct "business" or provide a "service" within the meaning of New York General Business Law §349.

86. Defendant engage in one or more of the above-referenced deceptive acts and practices in connection with the service of being "Education Consultant."

## SIXTH CAUSE OF ACTION
## NEW YORK EXECUTIVE LAW §63(12) ILLEGALITY VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349
## DECEPTIVE ACTS AND PRACTICES (ALL DEFENDANTS)

87. Plaintiff repeat and reiterate paragraphs 1 to 64 as though set out fully herein.

88. A violation of state law constitutes illegality within the meaning of New York Executive Law §63(12) and is actionable thereunder when persistent or repeated.

89. Defendants' repeated and persistent violation of GBL Article 22-A, §349 are thus violations of New York Executive Law §63(12).

90. By reason of the conduct alleged above, Defendants repeatedly and persistently engaging in illegality in violation of New York Executive Law §63(12).

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury in this action of all issues so triable.

WHEREFORE, Plaintiffs demand relief as follows:

1. On the FIRST CAUSE OF ACTION a money judgement in an amount to be determined by the trier of fact, but which is at least four hundred thousand dollars plus punitive damages;

2. On the SECOND CAUSE OF ACTION a money judgement in an amount to be determined by the trier of fact, but which is at least ninety thousand dollars plus punitive damages;

3. On the THIRD CAUSE OF ACTION a money judgement in an amount to be determined by the trier of fact, but which is at least ninety thousand dollars plus punitive damages.

4. Interest, Costs, and attorneys' fees, along with such other and further relief as the Court deems just.

Dated: Flushing, New York
August 13, 2018

KING L. WU & ASSOCIATES

By:/s/ King L. Wu
KING L. WU
Attorneys for Plaintiffs
136-40 39th Ave., Suite 507
Flushing, NY 11354
T: 718-888-0618
F: 718-888-0283
E: contact@wuesq.com