UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
SHANCHUN YU and RUILI JIN,                                        :
                                                                  :
                                       Plaintiffs,                :        18-CV-7303 (JMF)
                                                                  :
                     -v-                                          :        OPINION AND ORDER
                                                                  :
DIGUOJIAOYU, INC. d/b/a DIGUO EDU., et al.,                       :
                                                                  :
                                       Defendants.                :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

During this litigation, brought by Plaintiffs Shanchun Yu and Ruili Jin against Defendants Diguojiaoyu, Inc., doing business as Diguo Edu. ("Diguo"), and its alleged Chief Executive Officer, Shuntao Zhang a/k/a Kimi Zhang ("Zhang"), defense counsel Leonard X. Gillespie has described his own conduct as "absolutely remiss," "really contumacious," "inexcusabl[e]," "[un]justifiable," and "very unprofessional." ECF No. 52; March 19, 2019 Hearing Tr. 6-7. It is perhaps not surprising, therefore, that Plaintiffs moved for sanctions and to compel discovery, alleging a slew of failures on Gillespie's and Defendants' parts to comply with the Court's orders and their discovery obligations. What is perhaps more surprising is that Gillespie and Defendants did not even bother to respond. Nor did they respond to Plaintiffs' motion for summary judgment as to one claim, for defamation.

For the reasons that follow, Plaintiffs' requests for sanctions and to compel discovery are GRANTED, but their motion for partial summary judgment, although unopposed, is DENIED.

## BACKGROUND

Plaintiffs instituted this action on August 13, 2018. ECF No. 1. Plaintiffs allege that Diguo is "an education consultant agency that assists international students with school

applications" and that the company advertised its "connections to many prestigious universities" and "guarantee[d] their clients' acceptance into these schools regardless of poor grades." ECF No. 55 ("Plfs.' Mem."), at 2-3. Plaintiffs sought Diguo's help to draft and send applications to certain graduate programs. Allegedly unbeknownst to Plaintiffs, however, Diguo altered their transcripts. *Id.* at 3. When the falsified records were discovered, both Plaintiffs were expelled — one from the school to which she applied and was admitted, the other from the school she attended while applying to other programs. *Id.* Plaintiffs bring claims against Diguo and Zhang for fraud, deceptive business practices, and unjust enrichment. *See* ECF No. 1, ¶¶ 65-90.

On November 19, 2018, the Court held an initial pretrial conference.[1] As is standard, the conference (which was not held on the record) focused primarily on procedural matters, including the scope, nature, and timing of discovery — although for context there was some limited discussion of the merits. The Court set a March 19, 2019 deadline for the close of discovery and made no rulings on the merits of the parties' disputes. Nevertheless, Plaintiffs allege that the next day, November 20, 2018, Defendants published a written announcement (the "Announcement") on Diguo's "official WeChat platform" stating that the Court had ruled that Plaintiffs "were responsible for their own academic dishonesty" and that Defendants need not pay any compensation to Plaintiffs. ECF No. 32 ("Complaint" or "SAC"), ¶¶ 85-86, 116-17.[2] According to the Complaint, the Announcement also stated that "Plaintiffs conspired with their attorney . . . to defame, threaten, blackmail, and extort Diguo Edu for . . . $680,000." *Id.* ¶¶ 86,

---

[1] Gillespie got off to a bad start from the get go: He arrived more than twenty minutes late for the conference. Moreover, as of the date of the initial pretrial conference, he had not entered a notice of appearance in the case.

[2] Paragraph 116 of the Complaint states that the Announcement was made on "November 11, 2018" — *before* the initial pretrial conference. The Court assumes that is a typographical error and should state "November 20, 2018."

2

116. Plaintiffs allege that the Announcement harmed their reputations and the reputations of counsel; the Chinese Students Association of Ohio State University, for instance, informed counsel that it intended to dissociate itself from Yu as a result. *Id.* ¶¶ 87-88.

On December 19, 2018, Plaintiffs served discovery requests, including interrogatories, a notice of Zhang's deposition, and a request for production of documents. ECF Nos. 21-23. Not long after, Plaintiffs amended their Complaint to include a seventh cause of action, for defamation, arising out of the November 20, 2018 Announcement. SAC ¶¶ 115-124. When a second pretrial conference was held on the record on March 19, 2019, the deadline for the completion of discovery, Defendants had not responded to any of the discovery requests or filed an amended answer. *See* ECF No. 34. Defendants' failures — the first of Defendants' and Gillespie's many violations of court orders and discovery obligations — were merely two of the matters discussed at the March 19, 2019 pretrial conference. During the conference, Plaintiffs' counsel also advised the Court that he and Plaintiffs' witnesses had received threatening and harassing messages that they believed had been sent by Defendants.

As memorialized in an order the next day, the Court directed the parties to submit, no later than March 26, 2019, a joint letter addressing various matters, including "a description of actions" that the Court "should take or may take in light of the alleged threats and harassment." ECF No. 34. The Court ordered Gillespie — who admitted that he had no justification for Defendants' failures to answer the Second Amended Complaint and to respond to Plaintiffs' discovery requests, except that he had had trouble communicating with his clients — to "recount any efforts that he has taken to contact his clients; whether, and when, those efforts have been successful; and whether his clients intend to defend this action." *Id.* Finally, the Court granted, *nunc pro tunc*, Defendants an extension until March 29, 2019, to answer and to respond to

Plaintiffs' discovery requests. *Id.* The Court warned that "[a]ny failure by Defendants to meet that deadline may result in the imposition of sanctions." *Id.*

March 26, 2019, came and went, and no joint letter was filed. The parties did not file the joint letter until March 29, 2019, claiming that their tardiness was due in part to "discussions about [a] discovery extension" that needed to be resolved before proposing a briefing schedule for summary judgment. *See* ECF No. 36, ¶ 15. In a later filing, Plaintiffs informed the Court that the joint letter was delayed because "Defendant needed more time for discovery" and was contemplating moving for an extension. *See* ECF No. 41, at 1. The same day, March 29, 2019, Defendants finally responded to Plaintiffs' discovery requests — although it would be charitable to describe these responses even as perfunctory. Defendants raised repeated and rote objections to Plaintiffs' document requests, they refused to provide Plaintiffs any documents whatsoever, *see* ECF No. 37, and they answered the interrogatories in substantially similar fashion, *see* ECF No. 38. Moreover, the interrogatory responses were filed without any verification. *See id.* On April 1, 2019, Plaintiffs filed a letter-motion to compel discovery and for sanctions. ECF No. 41. The Court denied the request without prejudice on the ground that it was not made in a formal motion, but noted that the request for sanctions "seem[ed] well founded" because Defendants' discovery responses appeared "egregiously inadequate for many reasons." ECF No. 42. The Court "STRONGLY urged" Defendants "to remedy any discovery deficiencies" before summary judgment motions were due, noting that whether they did so "may bear on the Court's decisions with respect to whether sanctions are appropriate, whether sanctions should be imposed on Defendants alone or Defendants and defense counsel, and the extent of any such sanctions." *Id.*

Around the same time, the Court issued an order confirming the close of discovery, setting a briefing schedule for Plaintiffs' anticipated motion for partial summary judgment, and a deadline of April 26, 2019, for the filing of a joint pretrial order and related trial submissions. *See* ECF No. 40. The Order, entered April 1, 2019, also mandated that Defendants not threaten or harass Plaintiffs or their counsel and communicate with Plaintiffs only through counsel; that Gillespie immediately provide a copy of the Court's Order to Defendants; and that he docket proof of such service by April 5, 2019. *See id.* Gillespie failed to comply with any of these mandates. First, he failed to file a letter confirming that he had provided the Court's Order to his clients until May 30, 2019, *see* ECF No. 63, and then did so only after the Court issued an order noting his violation of the April 1, 2019 Order, *see* ECF No. 59. And even more significantly, he failed to cooperate with Plaintiffs' counsel in the preparation of the Joint Pretrial Order. As Plaintiffs' counsel described in a letter filed April 26, 2019: "My office has made several attempts to contact Defendants' counsel but to no avail. Defendants counsel has failed to reply to any of my office's emails. The paralegals at the office number continuously advised that 'he is not in the office right now' or that 'he cannot come to the phone right now.' I have left several messages but have not yet heard back from Mr. Gillespie." ECF No. 44. To comply with the Court's April 1, 2019 Order, Plaintiffs filed a proposed Pretrial Order of their own. ECF No. 43.

In response to Plaintiffs' letter, the Court ordered Defendants to show cause no later than May 7, 2019, why they should not be sanctioned for their failure to participate in the preparation and filing of Joint Pretrial Order. ECF No. 46. Amazingly, Defendants did not respond by the deadline. When Defendants had still not responded on May 14, 2019, the Court issued a "final warning," ordering Defendants to show cause no later than May 21, 2019, why the Court should not strike their answer and enter default judgment against them due to their repeated violations of

court orders and discovery obligations. ECF No. 51. On May 20, 2019, Mr. Gillespie submitted a letter admitting that he had "been absolutely remiss in keeping control of this file," conceding that he had "inexcusably failed in responding to and keeping current" with ECF notifications and email, and acknowledging his "total nonparticipation with Plaintiff[s'] counsel in the drafting of the proposed Joint Pretrial Order." ECF No. 52. In what can only be described as an act of extraordinary generosity, the Court granted Defendants until May 29, 2019, to submit a revised Joint Pretrial Order. ECF No. 57. The Court noted that "the submission of such *joint* materials will necessitate [Gillespie] reaching out to Plaintiffs' counsel **immediately** to cooperate on revising the materials." *Id.* And the Court warned that failure to comply with the deadline would result in entry of default judgment and other sanctions. *Id.*

Defendants did file a revised Pretrial Order on May 29, 2019, *see* ECF No. 60, but Plaintiffs' counsel separately informed the Court that Gillespie had failed to cooperate with him in the preparation of the materials. *See* ECF No. 62. Gillespie delayed contacting Plaintiffs' counsel until the evening before the deadline, sent proposed revisions hours before the deadline, ignored Plaintiffs' responses, and filed materials drafted without Plaintiffs' approval. *See id.* Defendants never disputed nor even responded to these claims.

## MOTION FOR SANCTIONS

The Court begins with Plaintiffs' sanctions motion. Plaintiffs move for sanctions on various grounds, including Rules 16 and 37 of the Federal Rules of Civil Procedure. *See* Plfs.' Mem. 7-9.[3] Sanctions also may be imposed pursuant to the Court's inherent authority. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Rule 16(f) authorizes sanctions for,

---

[3] Plaintiffs also invoke Rule 11 of the Federal Rules of Civil Procedure, but the Court need not decide whether that would provide an additional basis for sanctions.

among other things, "fail[ing] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Under Rule 37(b)(2), a court may grant sanctions against a party who "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Finally, the Court has inherent authority to impose sanctions for "disobedience [of] the orders of the [Court]," both before the "court and . . . beyond the court's confines." *Chambers*, 501 U.S. at 44. In fact, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs even absent a discovery order per se. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002).

In deciding whether sanctions are merited under Rule 16(f) or 37(b)(2), the Court need not find that the party acted in bad faith. *See, e.g.*, *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (Rule 16(f)); *Borsanyi v. Huggins*, No. 17-CV-7266 (CBA) (AKT), 2019 WL 4911188, at *6 (E.D.N.Y. Sept. 30, 2019) (Rule 37(b)(2)). The Court need find only that there is clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order. *See Huebner*, 897 F.3d at 53; *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010). (Of course, "intentional behavior, actions taken in bad faith, or grossly negligent behavior justify severe disciplinary sanctions." *Borsanyi*, 2019 WL 4911188, at *6.) By contrast, to warrant an award of attorney's fees pursuant to the Court's inherent authority, the Court must find that the lawyer or party being sanctioned acted in bad faith or that he willfully disobeyed the Court's orders. *See Chambers*, 501 U.S. at 50. Ultimately, the decision whether to impose sanctions is left to the Court's discretion. *See, e.g.*, *Macolor v. Libiran*, No. 14-CV-4555 (JMF), 2015 WL 337561, at *2 (S.D.N.Y. Jan. 23, 2015).

Here, there is no doubt that sanctions are warranted. Defendants and Gillespie have violated as many as six court orders. For starters:

7

1. On December 19, 2018, Plaintiffs served discovery requests, to which responses were due no later than January 18, 2019. *See* ECF Nos. 21-23; Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Defendants and Gillespie failed to respond by that date and had still not responded when the Court held a pretrial conference on March 19, 2019. In Gillespie's own words, his failure was "[un]justifiable," "really contumacious," and "very unprofessional." *See* March 19, 2019 Hearing Tr. at 6-7.

2. On March 20, 2019, the Court ordered the parties to submit a joint letter containing, among other things, a proposed briefing schedule for any anticipated summary judgment motion. ECF No. 34. The parties submitted the joint letter three days after the deadline. *Compare* ECF No. 36 (filed on March 29, 2019), *with* ECF No. 34 (setting a deadline of March 26, 2019). Plaintiffs later represented that Defendants had caused the delay. *See* ECF No. 41.

3. On April 1, 2019, the Court ordered defense Gillespie to provide a copy of the April 1, 2019 Order to Defendants and, no later than April 5, 2019, to file a letter confirming that he had done so. ECF No. 40. Gillespie complied with neither of these orders. Indeed, not until the Court on May 28, 2019, again ordered him to file such a letter, *see* ECF No. 59, did defense counsel file do so, and the document filed indicated that the order was not sent to Defendants until May 29, 2019. *See* ECF No. 63.

4. In the April 1, 2019 Order, the Court also ordered the parties to submit a proposed Joint Pretrial Order no later than April 26, 2019. ECF No. 40. Plaintiffs submitted a proposed order on their own — Defendants failed to participate in the drafting of the proposed Joint Pretrial Order. *See* ECF No. 44. Notably, Gillespie himself conceded his "total nonparticipation" in the drafting of the proposed Order, and acknowledged that he had been "absolutely remiss" in his handling of the case. ECF No. 52.

5. On April 30, 2019, the Court ordered Gillespie to show cause no later than May 7, 2019, why he and Defendants should not be sanctioned for failing to participate in the drafting and filing of the proposed Joint Pretrial Order. ECF No. 46. Gillespie did not file anything by that date. Gillespie responded only after the Court issued yet another order to show cause. *See* ECF Nos. 51, 52.

6. On May 22, 2019, the Court, "perhaps against its better judgment," ordered Defendants to submit their overdue joint pretrial materials no later than May 29, 2019. *See* ECF No. 57. Defendants submitted the materials on time, *see* ECF No. 60, but Plaintiffs informed the Court that defense counsel had not effectively communicated with them as ordered and had submitted a proposed Joint Pretrial Order "unapproved by Plaintiffs' [c]ounsel," *see* ECF No. 62.

In addition, Defendants and Gillespie violated the Court's March 20, 2019 Order mandating a response to overdue discovery requests no later than March 29, 2019. ECF No. 34. Defendants did serve (and, for that matter, file) responses on March 29, 2019, *see* ECF Nos. 37, 38, but those responses — to the extent they can even be called that — were patently deficient.

8

Most clearly, Defendants' interrogatory responses were not verified, as required by Rule 33 of the Federal Rules of Civil Procedure. *See* ECF No. 38; Fed. R. Civ. P. 33(b)(3), (5) (requiring that interrogatories must "be answered separately and fully in writing under oath" and be signed by "[t]he person who answers them . . . and the attorney who objects"); *see also In re World Trade Ctr. Disaster Litig.*, 722 F.3d 483, (2d Cir. 2013) (per curiam) (holding that interrogatory responses that did not include verification "under penalty of perjury" that the answers "are true and correct" to be insufficient). Making matters worse, Defendants answered only three of the ten interrogatories. *See* ECF No. 38. To the remaining seven, Defendants' answers included only objections and no substantive responses. These objections included, among others, vagueness, overbreadth, and complaints that the interrogatories were "without basis in record or fact" and "seek[] to hold Defendant[s] to conclusions constituting the ultimate conclusions of fact." *Id.* (answers to Interrogatory Nos. 3-8, 10). But such "generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable." *Am. Rock Salt Co. v. Norfolk S. Corp.*, 228 F.R.D 426, 432 (W.D.N.Y. 2004); *Anderson v. United Air Lines, Inc.*, 49 F.R.D. 144, 147-48 (S.D.N.Y. 1969) (noting, among other things, that "interrogatories are not objectionable merely because they seek to elicit opinions or conclusions").

Defendants' responses to Plaintiffs' document requests are little better. Defendants "refuse[d] to comply" with each of Plaintiffs' document requests, objecting that the requests were vague, overbroad, and sought documents immaterial to Plaintiffs' claims. ECF No. 37. As a general matter, such conclusory objections are improper. *See Am. Rock Salt Co.*, 228 F.R.D at 432. And more specifically, several are plainly groundless. For example, Defendants object to Plaintiffs' request for "all unredacted letters of acceptances previously posted on [Diguo's]

9

website" on the ground that the request is "vague, overly broad in time frame and scope" and is "immaterial" to Plaintiffs' claims. *See* ECF Nos. 23, 37 (Request No. 1). Defendants' objection regarding materiality borders on frivolous, and, even if a request for *all* such documents were vague and unduly broad as to time period, Defendants nonetheless have an obligation to comply with discovery requests to the extent that they are not objectionable. Defendants' concern regarding the request's allegedly vague and overbroad time period does not prohibit them from producing *some* documents within a specified reasonable, relevant time period. In any event, Defendants plainly failed to comply with the requirement that the response "state with specificity the grounds for objecting to the request" and also "state whether any responsive materials are being withheld on the basis of th[e] objection." Fed. R. Civ. P. 34(b)(2)(B), (C).

That Defendants' discovery responses are inadequate can come as no surprise to them or Gillespie. On April 1, 2019, Plaintiffs filed a letter-motion seeking sanctions and an order to compel discovery. *See* ECF No. 41. The Court denied that relief without prejudice because it was not sought through a formal motion, but pointedly noted that "Plaintiffs' request seems well founded, as Defendants' discovery responses . . . would seem to be egregiously inadequate." ECF No. 42. The Court "STRONGLY urged [Defendants] to remedy any discovery deficiencies" prior to the summary judgment deadline and warned that Defendants' failure to do so may impact the Court's decision on sanctions. *Id.* Defendants, at their peril, chose not to supplement their discovery responses. Instead, Gillespie claimed that "Defendants cooperated to the fullest extent possible" with Plaintiffs' discovery requests. *See* ECF No. 52. This conclusory statement is belied by the facts above, and it merits no further response other than sanctions.

The Court need not make a finding of bad faith to justify sanctions under Rules 16 and 37, but there is no doubt that Gillespie's violations of the Court's orders — in particular, the

Court's April 1, 2019 Order requiring him both to submit a proposed Joint Pretrial Order and to file proof that he had provided the Order to Defendants, as well as the Court's April 30, 2019 Order requiring him to show cause why he and Defendants should not be sanctioned for their failure to comply with the April 1, 2019 Order — were willful.  First, "[t]hese orders were explicit and there is no suggestion that [Gillespie] misread or misunderstood them." *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 455 (S.D.N.Y. 2011).  Second, there is no "good-faith explanation" for Gillespie's failure to comply.  *See S. New England Tel. Co.*, 624 F.3d at 148; *see also, e.g.*, *Dumann Realty, LLC v. Faust*, No. 09-CV-7651 (VM) (KNF), 2011 WL 2749523, at *4 (S.D.N.Y. July 8, 2011) (finding willfulness under Rule 37(b) in part because the lawyer "provided no reasonable explanation for his failure").  Indeed, Gillespie himself acknowledged that his conduct was "inexcusabl[e]." ECF No. 52.  And finally, Gillespie's failure to comply was "not isolated but rather [part of] a pattern" of non-compliance in this case dating to the very first conference.  *S. New England Tel.*, 624 F.3d at 148.  In light of Gillespie's willful disobedience of the Court's orders, sanctions are appropriate pursuant to the Court's inherent authority as well.

That leaves the question of what sanctions to impose.  Under Rule 16(f), "[i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with this rule." Fed. R. Civ. P. 16(f)(2).  That is, under Rule 16(f), "the court must award fees" — but "the fees that may be assessed are limited to those incurred as a result of the Rule violation." *Chambers*, 501 U.S. at 42 n.8.  Similarly, Rule 37 requires the Court to award "reasonable expenses, including attorney's fees, caused by the failure [to comply with the court order], unless the failure was substantially justified or other circumstances make an award of expenses unjust."

11

Fed. R. Civ. P. 37(b)(2)(C). By contrast, the Court's inherent power to impose sanctions includes the power to impose, in its discretion, "attorney's fees representing the entire cost of litigation." *Chambers*, 501 U.S. at 45; *see id.* at 56 (upholding a finding that "full attorney's fees were warranted due to the frequency and severity of [the lawyer's] abuses of the judicial system and the resulting need to ensure that such abuses were not repeated").

In light of the foregoing, the Court orders Defendants and Gillespie, jointly and severally, to reimburse Plaintiffs for the fees and costs they incurred as a result of Defendants' lapses. This includes the $3,450 in fees and costs Plaintiffs incurred as a result of Defendants' failure to participate in the preparation of the proposed Joint Pretrial Order, *see* ECF No. 61, as well as the fees and costs reasonably incurred in attempting to secure Defendants' responses to discovery requests, including the time spent attempting to communicate with defense counsel regarding the discovery responses and drafting communications to the Court explaining Defendants' failures in that regard, *see* ECF Nos. 41, 58. It also includes the fees and costs reasonably incurred in preparing and filing the instant motions. *See Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) ("Rule 37 provides that if a motion to compel is granted . . . the court *must* award reasonable motion expenses incurred in making the motion." (alterations and internal quotation marks omitted)); *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 292 (S.D.N.Y. 2009) ("[A]n award [of monetary sanctions] serves the remedial purpose of compensating [the movant] for the reasonable costs it incurred in bringing this motion [for sanctions]."); *Richardson v. Nassau Cty.*, 184 F.R.D. 497, 503 (E.D.N.Y. 1999) (imposing sanctions under Rule 16(f) for the moving party's "reasonable

expenses and attorney['s] fees incurred in relation to the motion practice arising out of [the sanctioned party's] noncompliance" with a court order).[4]

No later than **December 4, 2019**, Plaintiffs shall file an accounting of the foregoing costs and fees, supported by contemporaneous billing records (and properly authenticated by affidavit). By the **same date**, Defendants shall cure any failure to comply with their discovery obligations by providing complete (and, as required, verified) responses to Plaintiffs' requests for the production of documents and interrogatories. Plaintiffs' request for the Court to go further than that — to strike Defendants' pleadings and enter default judgment against them, *see* Plfs.' Mem. 11 — is denied. Given the history of this case, the request is tempting, but default judgment, like dismissal, is an "extreme sanction," *see Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam), and the Second Circuit has expressed a "strong preference for resolving disputes on the merits," *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal quotation marks omitted). Accordingly, the Court will not go that far — at least not yet. Defendants are warned, however, that the Court's patience is exhausted. Further violations of court orders, including further failure to comply with deadlines (such as any deadline to pay sanctions or to cure all discovery violations) or failure to appear for conferences, *will* result in the imposition of further sanctions, including possibly entry of default judgment.

---

[4] Although the fees and costs incurred to prepare the portions of the current motion materials that relate to summary judgment are not recoverable under Rule 16(f) and 37(b), the Court's inherent authority is not so limited. Rather than order Plaintiffs to spend time allocating costs associated with various portions of their combined motion, the Court exercises its inherent authority to include in the calculation of sanctions all such costs. *See Chambers*, 501 U.S. at 56 (finding that "full attorney's fees were warranted due to the frequency and severity of [the lawyer's] abuses of the judicial system").

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs' motion for summary judgment with respect to their defamation claim — although unopposed — requires only brief discussion. Summary judgment is appropriate when the record demonstrates that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *see* Fed. R. Civ. P. 56(a). Significantly for present purposes, however, "Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion . . . is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). That is, the non-movant's failure to oppose a summary judgment motion "allow[s] the district court to accept the movant's factual assertions as true" only if the court is "satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244, 246 (2d Cir. 2004). The court must also "determine whether the legal theory of the motion is sound." *Jackson*, 766 F.3d at 194.

Here, the Court is compelled to deny Plaintiffs' motion for one simple reason: They present no admissible evidence.[5] Plaintiffs largely rely on the purportedly defamatory statement itself, which Plaintiffs attach as Exhibit A to their memorandum of law. *See* Plfs.' Mem. 13; ECF No. 55-1. But a document is admissible in evidence only if it is authenticated by extrinsic "evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), or is a "self-authenticating" document for which extrinsic evidence of authenticity is not required, Fed. R. Evid. 902. Documents that are not "attached to an affidavit made on personal knowledge setting forth facts that would be admissible in evidence" and sufficient to

---

[5] On top of that, Plaintiffs failed to file a Statement of Material Facts Not in Dispute, as required by S.D.N.Y. Local Civil Rule 56.1.

authenticate the document "cannot be considered." *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000); *see also Kam Hing Enters., Inc. v. Wal-Mart Stores, Inc.*, 359 F. App'x 235, 237 (2d Cir. 2010) (summary order) (holding that document was inadmissible for purposes of summary judgment because it was "not accompanied by an affidavit from anyone with personal knowledge of the fax" and "was not properly authenticated"). Plaintiffs did not file an accompanying affidavit authenticating the document as a statement made by Defendants. Nor is the document self-authenticating under any of the categories of "self-authenticating" documents set forth in Federal Rule of Evidence 902. Absent any evidence that the statement was made by Defendants or was published to third parties, it is inadmissible and the Court cannot consider it.

Perhaps recognizing that problem, Plaintiffs also contend that Defendants have admitted factual assertions that give rise to a valid claim for defamation by virtue of their failure to deny Paragraphs 84 through 88 in their Answer. *See* Plfs.' Mem. 16 ("It is critical to note that Defendants' counsel did not deny these allegations in his answer to the Second Amended Complaint."); *see also* Fed. R. Civ. P. 8(b)(6) ("[A]n allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."). But Defendants *did* deny certain allegations contained in those paragraphs. Most critically, Defendants denied that they published the Announcement — albeit by denying Paragraphs 116 through 118, which repeat allegations contained in Paragraph 86. *Compare* Compl. ¶¶ 86, 116-18, *with* ECF No. 39 ("Answer"), ¶ 21. Although "it is troubling that no response" to Paragraph 86 "was made," where factual allegations are repeated in a complaint, as here, a defendant "d[oes] not have to deny [them] a second time." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 67 (2d Cir. 1999). Accordingly, neither the allegation that Defendants published the Announcement nor the allegations regarding the Announcement's content are deemed admitted.

None of the foregoing precludes Plaintiffs from authenticating the Announcement at trial or introducing other evidence in support of their defamation claim. At this stage, however, Plaintiffs have failed to "cit[e] to evidence in the record support[ing] the assertion" that Defendants published the Announcement. *Vt. Teddy Bear*, 373 F.3d at 244. Accordingly, Plaintiffs' partial summary judgment motion must be and is DENIED.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' request for sanctions and to compel discovery and DENIES their motion for partial summary judgment. No later than **December 4, 2019**, Plaintiffs shall file an accounting of the costs and fees reasonably incurred in attempting to secure Defendants' responses to discovery requests and in preparing and filing the instant motions. Plaintiffs must also file contemporaneous billing records (properly authenticated by affidavit). Defendants shall file any opposition **within one week of Plaintiffs' accounting**. No reply shall be filed absent leave of the Court. Defendants shall provide complete and verified responses to Plaintiffs' requests for the production of documents and interrogatories no later than **December 4, 2019**. Defendants' failure to meet any of the foregoing deadlines (or any other failure to comply with court orders going forward) will result in further sanctions, up to and including striking of Defendants' Answer and entry of default judgment.

The Clerk of Court is directed to terminate ECF Nos. 54 and 56.

SO ORDERED.

Dated: November 20, 2019
New York, New York

JESSE M. FURMAN
United States District Judge